# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

### CASE NO. 3:17-cv-01319-J-20-MCR

MAYRA MARTINEZ,

               Plaintiff,

v.

SHERIFF MIKE WILLIAMS, in his official
Capacity as Sheriff of the Jacksonville
Sheriff's Office and the Consolidated
City of Jacksonville, Florida, AKINYEMI
A. BORISADE, N.H. VICKERY, K. A. CHASTAIN,
J. C. ANDRES, and EMPERORS, INC., a Florida
Corporation, d/b/a SCORES.

               Defendants.

_____/

## FOURTH AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, MAYRA MARTINEZ, by and through her undersigned counsel, and files this Fourth Amended Complaint against Defendants, SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office for the Consolidated City of Jacksonville Florida, and OFFICER AKINYEMI BORISADE, individually, as well as OFFICER N. H. VICKERY, OFFICER K. A. CHASTAIN, and OFFICER J. C. ANDRES. Additionally, Plaintiff brings claims against EMPERORS, INC., a Florida Corporation, d/b/a SCORES (hereinafter referred to as "SCORES"). In support thereof, she states as follows:

## JURISDICTION, PARTIES AND VENUE

1.      This is an action for damages in tort as well as deprivation of civil rights guaranteed by the United States Constitution via 42 U.S.C. Sections 1983 and 1988, 4th and 14th Amendments of the U.S. Constitution and Florida state law claims, pursuant to the laws of the State of Florida.   The amount in controversy exceeds the jurisdictional limits of the Court, exclusive of interest, costs, and attorneys' fees.

2.      Venue and subject matter jurisdiction are properly before this Court because all wrongful acts complained of occurred within Jacksonville, Duval County, Florida.

3.      All conditions precedent to filing this Complaint have occurred. Prior to the filing of this Complaint, Plaintiff served requisite notices of these claims pursuant to Florida Statute Section 768.28 and other relevant laws.

4.      The Plaintiff, MAYRA MARTINEZ, is a resident of Orlando, Orange County, Florida, but at all material times resided in Jacksonville, Duval County, Florida, where the incidents described herein also occurred.

5.      The Defendant, MIKE WILLIAMS (hereinafter referred to as "SHERIFF WILLIAMS") serves in his official capacity as Sheriff at Jacksonville Sheriff's Office (hereinafter referred to as "JSO") for the Consolidated City of Jacksonville, Florida. JSO is a municipal police department in Jacksonville, Duval County, Florida. SHERIFF WILLIAMS is sued herein in his official capacity as Sheriff of JSO and is *sui juris*.

6.      Defendant, OFFICER AKINYEMI A. BORISADE #72073, (hereinafter referred to as "BORISADE"), at all material times was a resident of Jacksonville, Duval County, Florida and committed the acts and omissions contained herein in Jacksonville, Duval County, Florida. At all times material, Defendant BORISADE was employed by JSO as a law enforcement

officer, was acting in conformance with JSO's policies and procedures and under the color of state law.

7.      Defendant, OFFICER N.H. VICKERY #64291, (hereinafter referred to as "VICKERY"), at all material times was a resident of Jacksonville, Duval County, Florida and committed the acts and omissions contained herein in Jacksonville, Duval County, Florida. At all times material, Defendant VICKERY was employed by JSO as a law enforcement officer, was acting in conformance with JSO's policies and procedures and under the color of state law.

8.      Defendant, OFFICER K. A. CHASTAIN #66535, (hereinafter referred to as "CHASTAIN"), at all material times was a resident of Jacksonville, Duval County, Florida and committed the acts and omissions contained herein in Jacksonville, Duval County, Florida. At all times material, Defendant CHASTAIN was employed by JSO as a law enforcement officer, was acting in conformance with JSO's policies and procedures and under the color of state law.

9.      Defendant, OFFICER J. C. ANDRES #60228, (hereinafter referred to as "ANDRES"), at all material times was a resident of Jacksonville, Duval County, Florida and committed the acts and omissions contained herein in Jacksonville, Duval County, Florida. At all times material, Defendant ANDRES was employed by JSO as a law enforcement officer, was acting in conformance with JSO's policies and procedures and under the color of state law.

10.     At all times material, all law enforcement personnel involved herein were working in the city limits of Jacksonville, Duval County Florida, including Defendants BORISADE, VICKERY, CHASTAIN, and ANDRES, and were acting as employees and/or agents in the course and scope of their employment and/or agency with the JSO. All acts material hereto occurred in Jacksonville, Duval County, Florida.

11.     At all material times, Defendant EMPERORS INC., a Florida Corporation, d/b/a

3

SCORES, owned and operated an establishment called "SCORES" located at 4923 University Blvd. W, Jacksonville, Duval County, Florida.

12.    The fictitious name, "SCORES," is owned by EMPEROR'S INC., and is used to identify the establishment where the subject incidents occurred. Plaintiff uses the common legal acronym, "d/b/a," to identify both entities, "EMPEROR'S INC., d/b/a SCORES;" however, at all times material, sues EMPEROR'S INC., a Florida Corporation.

## GENERAL ALLEGATIONS

13.    At about 2:00 p.m., on April 27, 2016, new Jacksonville, Florida resident, MAYRA MARTINEZ, reported to her first day of work at SCORES, after recently relocating to Jacksonville, Florida from Orlando.

14.    At all times material to this Complaint, employees of SCORES were acting in the course and scope of their employment with EMPEROR'S, INC., a Florida Corporation.

15.    During her shift, MS. MARTINEZ was served alcohol (or some other intoxicant) by fellow SCORES employee(s). She may have been involuntarily given a drug while at SCORES.

16.    SCORES employees called the police and reported MS. MARTINEZ as "trespassing."

17.    SCORES employees ejected MS. MARTINEZ from the interior of its premises while depriving her of her possessions, including her purse, house and car keys, identification, phone, social security card and other belongings.

18.    Police officer, Defendant, BORISADE, on behalf of the JSO, reported to the scene in his official capacity in response to the trespass complaint.

19.    MS. MARTINEZ was not given her possessions and was ordered to leave the

4

premises and parking lot immediately without further guidance or assistance other than she was told she could not drive her vehicle as she appeared to be under the influence.

20.     MS. MARTINEZ was told she could walk to another location despite being also told she was publicly intoxicated. Based on the claim by Defendant BORISADE and others that she was intoxicated, this order would have potentially caused her to violate another law (public intoxication) and potentially cause further harm to herself or others.

21.     Before leaving, MS. MARTINEZ repeatedly requested her personal items, including her purse, wallet, house and car keys, identification, phone, social security card and other belongings.

22.     Defendant BORISADE refused to retrieve MS. MARTINEZ'S belongings and ordered her to leave the exterior of the property despite SCORES knowingly keeping her purse, keys, wallet, identification, phone, social security card and other belongings.

23.     When she would not roam off alone and without the ability to drive, use her phone to call others for assistance, or access her home without her keys, Defendant BORISADE attempted to arrest MS. MARTINEZ.

24.     BORISADE, and a fellow officer, VICKERY, went "hands on" with MS. MARTINEZ and used escalating force to detain her.

25.     BORISADE pinned MS. MARTINEZ on the ground while using "pain compliance" upon MS. MARTINEZ, including strikes to her body and head.

26.     VICKERY assisted BORISADE in pinning MS. MARTINEZ on the ground.

27.     VICKERY did not make any attempts to stop or detain BORISADE as he repeatedly struck MS. MARTINEZ as she was lying face down on the parking lot pavement.

28.     MS. MARTINEZ can be heard screaming at this time from a good Samaritan's

vehicle dash-cam, "I didn't do anything."

29.     BORISADE and VICKERY were not aware they were being recorded while using force on MS. MARTINEZ.

30.     MS. MARTINEZ was bound and forcibly placed into a police car.

31.     MS. MARTINEZ was transported to the sally port (intake corridor) of the Pre-Trial Detention Facility of JSO by BORISADE.

32.     MS. MARTINEZ remained restrained in BORISADE'S police cruiser for a prolonged period of time while BORISADE and VICKERY consulted each other while drafting their reports.

33.     MS. MARTINEZ was taken to the intake corridor of the Pre-Trial Detention Facility, and awaited processing into the jail. Said facility had video cameras recording at all material times.[1]

34.     MS. MARTINEZ remained handcuffed at all material times at the Pre-Trial Detention Facility sally port.

35.     OFFICER BORISADE made degrading and sexually harassing statements to MS. MARTINEZ, such as these are "not like the fuzzy cuffs you are used to."

36.     BORISADE approached MS. MARTINEZ and MS. MARTINEZ attempted to push him away or kick at him out of fear. BORISADE used repeated strikes or "pain compliance" on her repeatedly, attempting to subdue her.

37.     BORISADE repeatedly struck MS. MARTINEZ in the areas of her stomach, chest and face, knocking her unconscious.

38.     No officer employed by SHERIFF MIKE WILLIAMS made any attempts to stop or detain BORISADE.

---

[1] Plaintiff has obtained said video evidence and will submit to this court under separate filing..

39.     OFFICER ANDRES and other officers employed by SHERIFF MIKE WILLIAMS warned BORISADE before he hit MS. MARTINEZ, about not hitting her because, "they got cameras here, don't be stupid."

40.     Despite this, neither OFFICER ANDRES, nor any other officer employed by SHERIFF MIKE WILLIAMS attempted to intervene, to stop BORISADE, or come to MS. MARTINEZ'S aid, except warning BORISADE about cameras and not to be "stupid".

41.     Video footage shows that all officers employed by SHERIFF MIKE WILLIAMS on scene failed to check on MARTINEZ while she lay unconscious from BORISADE'S use of force.

42.     MS. MARTINEZ was left passed out or unconscious after BORISADE's physical contact without medical care, assistance or examination.

43.     MS. MARTINEZ did not move for nearly fifteen minutes and no JSO officer employed by SHERIFF MIKE WILLIAMS provided assistance regarding her unconsciousness, including but not limited to OFFICERS BORISADE, CHASTAIN, and ANDRES.

44.     Jacksonville Fire and Rescue was ultimately called and was given false or a fundamental lack of information about MS. MARTINEZ by JSO officers employed by SHERIFF MIKE WILLIAMS.

45.     Defendant, BORISADE made misleading claims in the presence of other officers employed by SHERIFF MIKE WILLIAMS to medical professionals and failed to disclose other physical contact he made, such as striking MS. MARTINEZ'S head earlier that day.

46.     The EMT report indicated EMTs repeatedly urged officers employed by SHERIFF MIKE WILLIAMS to allow them to take MS. MARTINEZ to a hospital in the ambulance located only a few feet away.

47.     BORISADE and other officers responded on MS. MARTINEZ'S behalf and refused MS. MARTINEZ further medical treatment or hospitalization, "against (the EMT's) medical advice."

48.     Once revived and taken inside, another JSO officer employed by SHERIFF MIKE WILLIAMS argued with MS. MARTINEZ over a body piercing in her nose area that she was unable to remove.

49.     Instead of deescalating or following protocol for a head injury victim, MS. MARTINEZ was again confronted with unnecessary and excessive force by several officers employed by SHERIFF MIKE WILLIAMS while trying to change clothes. She was physically taken down to the ground by male and female officers, this time while completely nude.

50.     Several male officers employed by SHERIFF MIKE WILLIAMS assisted with restraining MS. MARTINEZ while she was nude.

51.     These officers employed by SHERIFF MIKE WILLIAMS exhibited unreasonable use of force and/or failed to stop or intervene in the rendering of unreasonable force.

52.  Upon information and belief, JSO officers employed by SHERIFF MIKE WILLIAMS used a "prostraint chair" on MS. MARTINEZ to restrain her after one or more of these incidents.

53.     Once MS. MARTINEZ was processed into jail, she was approached in her jail cell by two members of JSO's "integrity unit" who are employed by SHERIFF MIKE WILLIAMS during the middle of the night. MS. MARTINEZ asked for a lawyer long before this encounter and had not been provided one, nor access to one.

54.     Despite MS. MARTINEZ's multiple requests for an attorney, JSO officers employed by SHERIFF MIKE WILLIAMS proceeded to take statements from MS. MARTINEZ

under the guise that the statements would merely be used only as an internal investigation against Defendant BORISADE.

55.     BORISADE acknowledged in a recorded statement that as part of his training with JSO and SHERIFF MIKE WILLIAMS, JSO officers are allowed to strike suspects in handcuffs.

56.     When later asked by JSO's integrity officers employed by SHERIFF MIKE WILLIAMS, BORISADE admitted, "the amount of times I hit her... looked bad on camera."

57.     In addition to the physical damage to her head, neck, arms, back and head, MS. MARTINEZ suffers from emotional damages and mental pain and suffering, including fear, embarrassment, humiliation, anger, depression, and other emotions that hinder the enjoyment of living which result from the incident and its aftermath. She also suffers Post Traumatic Stress Disorder (PTSD) and similar disorders.

### JSO CUSTOMS AND POLICIES THAT CONSTITUTE DELIBERATE INDIFFERENCE TO THE CONSTITUTIONAL RIGHT TO BE FREE FROM EXCESSIVE USES OF FORCE

58.     Defendant's BORISADE's use of force is part of a longstanding practice by JSO of tolerating the use of force against individuals who are not resisting.

59.     In December 2004, a member of the Jacksonville Sheriff's Office slammed Sammy Lee Evans to the ground.  Mr. Evans hit his head on the ground as he was slammed by the officer and this resulted in Mr. Evan's death.  Mr. Evans was not resisting the arrest, which was for open container of alcohol.

60.     In January 2006, members of the Jacksonville Sheriff's Office broke the right jaw of Brian Barnes when effectuating his arrest.  The JSO members struck Barnes despite the fact that Barnes complied with all of their commands and did not resist the officers while being arrested. *See Barnes v. Sheriff Rutherford, et. Al.,* Case No.:3:08-cv-217-J-33JRK (M.D. Fla.

Jacksonville Division).  There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until prompted by the City of Jacksonville Office of General Counsel sending of a complaint to JSO in January 12, 2011.  This complaint and accompanying investigation was made four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit was settled. The JSO Internal Affairs United concluded as follows relating to Mr. Barnes' incident: "that charge of EXCESSIVE FORCE against Police Lieutenant R. W. Beltz #7862 and Police Officer C.M. Weippert #7829 be classified as NOT SUSTAINED.

61.     In October 2007, two members of the Jacksonville Sheriff's Office, along with a civilian "ride along," rammed the head of Colin Runge into a steel door in the intake area of the jail.  At the time, Runge was fully secured and unable to resist the officers as he was in total appendage restraint, otherwise known as being "hog tied."

62.     In January 2008, a member of the Jacksonville Sheriff's Office broke the jaw of Larue Perkins by slamming him to the pavement of a parking lot.  At the time, Perkins was complying with the officer's directive to leave the parking area.  Perkins was also falsely arrested after having his jaw broken.  Perkins filed a written internal affairs complaint with JSO shortly after the January 2008 incident.  On January 21, 2011, almost three years after the incident, the JSO Internal Affairs United received an "in-house complaint" from the City of Jacksonville's Office of General Counsel regarding the January 2008 incident involving Perkins.  The subject matter of the complaint was the JSO officer's excessive use of force against Perkins.  The in-house complaint was then investigated by the JSO Internal Affairs Unit which concluded that "the charge of Excessive Force against Police Officer R.J. Tolen #5597 be classified as NOT SUSTAINED.

63.     In September 2008, a member of the Jacksonville Sheriff's Office dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head, resulting in paralysis to Mr. Lunsford.  The officer did so despite Lunsford's prior warning to the officer that Lunsford had four screws and a plate in his neck.  *See Lunsford v. Rutherford, et. al.,* Case No.:3:09-cv-01015-MMH-MCR (M.D. Fla. Jacksonville Division).  Upon information and belief, the incident was referred to JSO Internal Affairs and no disciplinary action was taken against the officer involved.

64.     In May 2010, a member of the Jacksonville Sheriff's Office fractured multiple facial bones of David Kemp when the officer violently struck Mr. Kemp as he laid on the ground in complaiance with the officer's commands to do so.  *See Kemp v. Rutherford et. al.,* Case No.:3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division).  Despite Sheriff Rutherford's actual notice of Mr. Kemp's incident because of the federal lawsuit filed against him, Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and officer involved and failed to discipline the officer involved.

65.     In March 2012, members of the Jacksonville Sheriff's Office questioned Kyle Fowler concerning a stolen vehicle.  At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose.  After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members due to the behavior of the officers and told them he was not interested in speaking anymore, and began to walk towards his gate. As he did so, the JSO members knocked Mr. Fowler through a closed metal gate onto the ground.  The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him and effectuate his arrest, injuring Mr. Fowler in the process.  The charge on which Mr. Fowler was falsely arrested, resisting an officer

11

without violence, was ultimately dismissed. The JSO members involved were not disciplined or reprimanded for their actions against Mr. Fowler.

66.     In June 2013, a member of the Jacksonville Sheriff's Office violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident.  Mr. Slade was merely asking the officer when his insurance information would be taken following an accident when he was forcefully thrown to the ground. Mr. Slade was falsely arrested for resisting an officer without violence in violation of §843.02, Fla. Stat. (2012).  The charges against Mr. Slade were dismissed.  The JSO member involved was not disciplined or reprimanded for his actions against Mr. Slade.

67.     On November 12, 2014, at the Duval County Pretrial Detention Facility, a member of the Jacksonville Sheriff's Office violently slammed Deandre Ezell's head into a concrete wall, while Mr. Ezell was handcuffed.  The use of force knocked Mr. Ezell unconscious and resulted in Mr. Ezell's hospitalization.  At the time of this incident, Mr. Ezell was a minor. None of the officers involve d in the use of force were disciplined or reprimanded.

68.     On April 4, 2017, Connell Crooms was participating in a peaceful protest at Heming Park Plaza in Jacksonville Florida, when a counter-protestor reached his arm of the shoulder of a member of the Jacksonville Sheriff's Office and stuck his middle finger in Mr. Crooms' face.  Rather than apprehend the aggressor, members of the Jacksonville Sheriff's office threw Connell Crooms to the ground, struck him repeatedly in the back and face, and pressed a Taser to his back, all of which caused Mr. Crooms to lose consciousness and require hospitalization. Mr. Crooms is deaf and did not resist or disobey any of the officer's commands.

## COUNT I
## BATTERY BY AN OFFICER WITHIN HIS COURSE AND SCOPE OF EMPLOYMENT
## (AT SCORES)

Plaintiff adopts and re-alleges Paragraphs 1 through 68 as if set forth fully herein, and further alleges as follows:

69. On or about April 27, 2016, BORISADE, an employee and uniformed officer under SHERIFF MIKE WILLIAMS committed a battery when he touched, punched, shoved and/or hit Plaintiff, MAYRA MARTINEZ, without her consent and against her will within the course and scope of his employment with JSO.

70. The aforementioned act of striking or using "pain compliance" on Plaintiff was the intended act of BORISADE and was carried out in the presence of other JSO officers who did not try to stop it, intervene, or remove BORISADE from MAYRA MARTINEZ'S presence.

71. BORISADE was exclusively trained on how to interact with suspects by SHERIFF MIKE WILLIAMS and his department. This use of force was unnecessary to defend himself or another officer while making an arrest.

72. As a direct and proximate result of the acts of Officer BORISADE by and through his employment and training from SHERIFF MIKE WILLIAMS at JSO, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired. These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law, against the Defendant, SHERIFF MIKE WILLIAMS and any other such relief this Honorable Court deems reasonable and just.

## COUNT II
## BATTERY BY AN OFFICER WITHIN HIS COURSE AND SCOPE OF EMPLOYMENT
## (AT PTDF SALLY PORT)

Plaintiff adopts and re-alleges Paragraphs 1 through 68 as if set forth fully herein, and further alleges as follows:

73.     On or about April 27, 2016, BORISADE, an employee and uniformed officer under SHERIFF MIKE WILLIAMS committed a battery when he touched, punched, shoved and/or hit Plaintiff, MAYRA MARTINEZ, without her consent and against her will within the course and scope of his employment with JSO.

74.     The aforementioned act of striking or using "pain compliance" on Plaintiff was the intended act of BORISADE and was carried out in the presence of other JSO officers who did not stop it, intervene, or remove BORSIADE from MAYRA MARTINEZ'S presence.

75.     BORISADE was exclusively trained on how to interact with suspects by SHERIFF MIKE WILLIAMS and his department. This use of force was unnecessary to defend himself or another officer while making an arrest.

76.     As a direct and proximate result of the acts of Officer BORISADE by and through his employment and training from SHERIFF MIKE WILLIAMS at JSO, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired. These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law,

against the Defendant, SHERIFF MIKE WILLIAMS and any other such relief this Honorable Court deems reasonable and just.

### COUNT III
### NEGLIGENCE BY AN OFFICER WITHIN HIS COURSE AND SCOPE OF EMPLOYMENT (BORISADE AT SCORES)

Plaintiff adopts and re-alleges Paragraphs 1 through 68 as if set forth fully herein and further alleges as follows:

77.    On April 27, 2016, Defendant BORISADE encountered Plaintiff MAYRA MARTINEZ in the parking lot of Scores.  Defendant BORISADE repeatedly struck Plaintiff while she was handcuffed and lying face down on the parking lot pavement.  While doing so Defendant BORISADE negligently misapplied his training as a law enforcement officer when he struck Plaintiff MAYRA MARTINEZ repeatedly and without justification.

78.    At no point prior to and/or during this use of force did Defendant BORISADE have any legal justification to use such force against Plaintiff, MAYRA MARTINEZ.  Likewise, Defendant BORISADE was not trained to use such force during said encounter.

79.    Defendant BORISADE owed a duty to Plaintiff MAYRA MARTINEZ to act as a reasonable law enforcement officer under the same or similar circumstances.  A reasonable law enforcement officer under the same or similar circumstances would have applied his law enforcement training to the encounter and would have followed established protocol and procedures.

80.    Defendant BORISADE breached this duty of care when he negligently misapplied his law enforcement officer training during the encounter and repeatedly used force upon Plaintiff as she lay handcuffed and face down on the parking lot pavement outside of Scores nightclub.

81.     As a direct and proximate result of the aforementioned negligent acts of Defendant BORISADE, Plaintiff MAYRA MARTINEZ suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired.  These loses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

82.     At all times relevant herein, Defendant BORISADE was acting as a uniformed officer within the course and scope of his employment with the Jacksonville Sheriff's Office.

83.     Under Florida Statute § 768.28, Defendant MIKE WILLIAMS, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida is vicariously liable for the negligent acts of its employees, including Defendant BORISADE.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law, against the Defendant SHERIFF WILLIAMS in his capacity at JSO, and any other such relief this Honorable Court deems reasonable and just.

### COUNT IV
### NEGLIGENCE BY AN OFFICER WITHIN HIS COURSE AND SCOPE OF EMPLOYMENT (BORISADE AT PTDF SALLY PORT)

Plaintiff adopts and re-alleges Paragraphs 1 through 68 as if set forth fully herein and further alleges as follows:

84.     On April 27, 2016, Defendant BORISADE encountered Plaintiff MAYRA MARTINEZ in the Sally port of JSO's Pre-Trial Detention Facility.  Defendant BORISADE repeatedly struck Plaintiff MAYRA MARTINEZ while Plaintiff was handcuffed.  Defendant

BORISADE negligently misapplied his training as a law enforcement officer when he struck Plaintiff MAYRA MARTINEZ repeatedly and without justification ultimately causing her to lose consciousness.

85.     At no point prior to and/or during this use of force did Defendant BORISADE have any legal justification to use such force against Plaintiff, MAYRA MARTINEZ.  Likewise, Defendant BORISADE was not trained to use such force during said encounter.

86.     Defendant BORISADE owed a duty to Plaintiff MAYRA MARTINEZ to act as a reasonable law enforcement officer under the same or similar circumstances.  A reasonable law enforcement officer under the same or similar circumstances would have applied his law enforcement training to the encounter and would have followed established protocol and procedures.

87.     Defendant BORISADE breached this duty of care when he negligently misapplied his law enforcement officer training during the encounter and repeatedly used force upon Plaintiff as she lay handcuffed and face down on the parking lot pavement outside of Scores nightclub.

88.     As a direct and proximate result of the aforementioned negligent acts of Defendant BORISADE, Plaintiff MAYRA MARTINEZ suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired.  These loses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

89.    At all times relevant herein, Defendant BORISADE was acting as a uniformed officer within the course and scope of his employment with the Jacksonville Sheriff's Office.

90.    Under Florida Statute § 768.28, Defendant MIKE WILLIAMS, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida is vicariously liable for the negligent acts of its employees, including Defendant BORISADE.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law, against the Defendant SHERIFF WILLIAMS in his capacity at JSO, and any other such relief this Honorable Court deems reasonable and just.

## COUNT V: NEGLIGENT TRAINING AGAINST SHERIFF MIKE WILLIAMS

91.    Plaintiff adopts and re-alleges paragraphs 1 through 68 as if set forth fully herein, and further alleges as follows.

92.    On April 27, 2016, Defendant BORISADE encountered Plaintiff MAYRA MARTINEZ in the parking lot of Scores.  Defendant BORISADE repeatedly struck Plaintiff MAYRA MARTINEZ while Plaintiff was in handcuffs and lying face down on the parking lot pavement.  Defendant BORISADE's actions against Plaintiff MAYRA MARTINEZ caused Plaintiff significant physical and mental injuries.

93.    On April 27, 2016, Defendant BORISADE encountered Plaintiff MAYRA MARTINEZ in the Sally Port of Jacksonville Pre-trial detention facility.  Defendant BORISADE repeatedly struck Plaintiff MAYRA MARTINEZ while Plaintiff was handcuffed.  Defendant BORISADE's actions caused Plaintiff MAYRA MARTINEZ to significant physical and mental injuries.

94.     At all times relevant herein Defendant BORISADE was acting as a uniformed officer within the course and scope of his employment with the Jacksonville Sheriff's Office.

95.     Defendant BORISADE acknowledged in a recorded statement that as part of his training with JSO and SHERIFF MIKE WILLIAMS, JSO officers are allowed to strike suspects in handcuffs.

96.     When later asked by JSO's integrity officers employed by SHERIFF MIKE WILLIAMS, Defendant BORISADE admitted, "the amount of times I hit her... looked bad on camera."

97.     Defendant MIKE WILLIAMS, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida owed a duty to Plaintiff MAYRA MARTINEZ to properly train the employees and uniformed Officers under his employ.

98.     Defendant MIKE WILLIAMS, breached this duty of care in the following ways.

a.     By training Defendant BORISADE to unreasonably use force on suspects including Plaintiff MAYRA MARTINEZ;

b.     By not training or supervising Defendant BORISADE on reasonable uses of force on suspects, including Plaintiff MAYRA MARTINEZ;

c.     By not training Defendant BORISADE to use reasonable force on suspects, including Plaintiff MAYRA MARTINEZ;

d.     By failing to train officers to intervene where there is clearly escalating aggression by officers, including BORISADE, which is visible to officers and closed-captioned television cameras; and

e.     By not training officers, including Defendant BORISADE, in de-escalation techniques.

99.     As a direct and proximate result of the aforementioned negligent acts of Defendant SHERIFF WILLIAMS, in his official capacity, Plaintiff MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired.  These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, and interests provided under the applicable law, against the Defendant SHERIFF WILLIAMS in his capacity at JSO, and any other such relief this Honorable Court deems reasonable and just.

**COUNT VI**
**NEGLIGENCE BY AN OFFICER WITHIN HIS COURSE AND**
**SCOPE OF EMPLOYMENT (VICKERY AT SCORES)**

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein, and further alleges as follows:

100.    Defendant VICKERY assisted BORISADE and was present at all material times during BORISADE's use of force upon Plaintiff, MAYRA MARTINEZ.

101.    Defendant VICKERY admitted he was concerned about the use of force and amount of punches BORISADE inflicted upon Plaintiff, MAYRA MARTINEZ, in the SCORES parking lot.

102.    Defendant VICKERY admitted the following: "I think there was a point where [BORISADE] actually pushed her face into the ground."

103.   Despite seeing BORISADE's actions, which he knew were inappropriate and/or excessive, VICKERY did not act or seek to separate BORISADE and Plaintiff, MAYRA Martinez, at the SCORES scene or subsequent to that scene.

104.   Despite seeing actions he knew were inappropriate and/or excessive, VICKERY did not act or seek to report the conduct or otherwise prevent BORISADE from attacking Plaintiff, MAYRA MARTINEZ, a second time.

105.   Defendant VICKERY owed a duty to Plaintiff, MAYRA MARTINEZ, to use appropriate force, prevent other officers from using illegal force, and to act as a reasonable law enforcement officer under the same or similar circumstances.

106.   Defendant VICKERY'S actions and/or inactions were negligent and were the direct and proximate cause of Plaintiff, MAYRA MARTINEZ'S injuries.

107.   Officers have a duty to protect individuals from constitutional violations by fellow officers. Therefore, an officer who witnesses a fellow officer violating an individual's constitutional rights may be liable to the victim for failing to intervene.

108.   Police officers have an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in their presence by other officers. Officers who fail to intervene may be liable for the harm caused by their colleagues.

109.   As a direct and proximate result of the aforementioned negligent acts of Officer VICKERY, SHERIFF MIKE WILLIAMS is liable. Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly

impaired.   These losses are either permanent or continuing in nature and Plaintiff, MAYRA

MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages,

including compensatory damages, all costs, and interest provided under the applicable law,

against the Defendant SHERIFF MIKE WILLIAMS and any other such relief this Honorable

Court deems reasonable and just.

### COUNT VII
### CLAIMS OF NEGLIGENCE AGAINST OFFICERS OF JSO WITHIN THEIR COURSE AND SCOPE OF EMPLOYMENT (CHASTAIN, ANDRES AND OTHER OFFICERS AT PTDF SALLY PORT)

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein, and

further alleges as follows:

110.   Defendants K. A. CHASTAIN, J. C. ANDRES, AND OTHER UNKNOWN

OFFICERS were present at all material times during BORISADE's use of force upon Plaintiff,

MAYRA MARTINEZ.

111.   Defendants K. A. CHASTAIN, J. C. ANDRES, AND OTHER UNKNOWN

OFFICERS made various statements, admitting concern about BORISADE'S actions and

BORISADE'S growing anger and hostility towards Plaintiff, MAYRA MARTINEZ.

112.   Despite seeing BORISADE's actions, which Defendants knew or should have

known were inappropriate and/or excessive, the officers did not act or seek to separate

BORISADE and Plaintiff, MAYRA MARTINEZ, at any point or seek to otherwise intervene.

113.   Despite seeing interactions they knew or should have known were inappropriate

and/or excessive, the officers did not act or seek to report the conduct or otherwise prevent

BORISADE from attacking Plaintiff, MAYRA MARTINEZ at the jail facility.

114.    Defendants owed a duty to Plaintiff, MAYRA MARTINEZ, to use appropriate force, prevent other officers from using illegal force, and to act as a reasonable law enforcement officers under the same or similar circumstances.

115.    Defendants actions and/or inactions were negligent and were the direct and proximate cause of Plaintiff, MAYRA MARTINEZ'S injuries.

116.    Officers have a duty to protect individuals from constitutional violations by fellow officers. Therefore, an officer who witnesses a fellow officer violating an individual's constitutional rights may be liable to the victim for failing to intervene.

117.    Police officers have an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in their presence by other officers. Officers who fail to intervene may be liable for the harm caused by their colleagues.

118.    As a direct and proximate result of the aforementioned negligent acts of Officers K. A. CHASTAIN, J. C. ANDRES, and other unknown officers, Defendant SHERIFF MIKE WILLIAMS is liable. Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired. These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law, against the Defendant SHERIFF MIKE WILLIAMS based on the conduct of his officers, and any other such relief this Honorable Court deems reasonable and just.

## COUNT VIII
## DEFENDANT VICKERY'S VIOLATIONS OF 42 U.S.C. § 1983 (AT SCORES)

Plaintiff adopts and re-alleges Paragraphs 1 through 118, as if set forth fully herein, and further alleges as follows:

119.   On or about April 27, 2016, Defendant VICKERY, as an employee and uniformed officer with JSO, witnessed Defendant BORISADE fail to follow his training, commit a battery and/or use unlawful force when he punched, shoved and/or hit Plaintiff, MAYRA MARTINEZ without her consent and against her will while in the parking lot of Scores nightclub.

120.   Defendant VICKERY was present at all material times during Defendant BORISADE's use of force upon Plaintiff, MAYRA MARTINEZ.

121.   Defendant VICKERY made various statements admitting concern about BORISADE's actions and BORISADE's growing anger and hostility towards Plaintiff, MAYRA MARTINEZ.

122.   Despite witnessing BORISADE's actions, which Defendant VICKERY knew were inappropriate and/or excessive, Defendant VICKERY did not act to seek to separate Defendant BORISADE and Plaintiff, MAYRA MARTINEZ at any point or seek to otherwise intervene.

123.   Despite seeing interactions he knew were inappropriate and/or excessive, Defendant VICKERY did not act or seek to report the conduct or otherwise prevent Defendant BORISADE from striking Plaintiff MAYRA MARTINEZ in the Scores parking lot.

124.   Defendant VICKERY allowed Defendant BORISADE to continue to keep Plaintiff, MAYRA MARTINEZ, in charge of this ward of JSO despite his battery and/or unreasonable use of force against her and/or despite clear signs of his unfounded anger and

24

hostility toward Plaintiff MAYRA MARTINEZ and his disregard for his law enforcement training.

125.    The actions and omissions of Defendant VICKERY violated clearly established law, and violated the Constitutional rights of Plaintiff, MAYRA MARTINEZ, including her rights under the Fourth and Fourteenth Amendments to the United States Constitution, through the wrongful acts of failing to intervene and in fact facilitating Defendant BORISADE'S unreasonable force against Plaintiff, MAYRA MARTINEZ.

126.    As a direct and proximate result of the acts and omissions of Defendant VICKERY, Plaintiff MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired.  These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgement for damages, including compensatory damages, all costs, and interest provided under the applicable law, against Defendant VICKERY, and any other such relief this Honorable Court deems reasonable and just.

**COUNT IX**
**DEFENDANTS K. A. CHASTAIN, J. C. ANDRES, AND OTHER UNKNOWN**
**OFFICERS VIOLATIONS OF 42 U.S.C. § 1983 (AT PTDF SALLY PORT)**

Plaintiff adopts and re-alleges Paragraphs 1 through 56, as if set forth fully herein, and further alleges as follows:

127.    On or about April 27, 2016, Defendants K. A. CHASTAIN, J. C. ANDRES, and

other unknown officers, as employees and uniformed officers with JSO, witnessed BORISADE

commit a battery and/or unlawful use of force when he used unreasonable and illegal force,

punched, shoved and/or hit Plaintiff, MAYRA MARTINEZ without her consent and against her

will.

128.    Defendants K. A. CHASTAIN, J. C. ANDRES, and other unknown officers were

present at all material times during BORISADE's use of force upon Plaintiff, MAYRA

MARTINEZ.

129.    Defendants K. A. CHASTAIN, J. C. ANDRES, and other unknown officers made

various statements, admitting concern about BORISADE'S actions and BORISADE'S growing

anger and hostility towards Plaintiff, MAYRA MARTINEZ.

130.    Despite seeing BORISADE's actions, which Defendants knew or should have

known were inappropriate and/or excessive, the officers did not act or seek to separate

BORISADE and Plaintiff, MAYRA MARTINEZ at any point or seek to otherwise intervene.

131.    Despite seeing interactions they knew or should have known were inappropriate

and/or excessive, the officers did not act or seek to report the conduct or otherwise prevent

BORISADE from attacking Plaintiff, MAYRA MARTINEZ at the jail facility.

132.    Despite expressing concerns and even comments to BORISADE to be careful

because there were cameras in the area, these officers as a group and as individuals never

intervened, nor did they contemporaneously report or seek to detain BORISADE or otherwise

seek to protect Plaintiff, MAYRA MARTINEZ, and her rights. In fact, these officers allowed

BORISADE to continue to keep Plaintiff, MAYRA MARTINEZ in charge of this ward of JSO

despite his battery and/or unreasonable use of force against her at an earlier time and/or despite

clear signs of his unfounded anger and hostility towards Plaintiff, MAYRA MARTINEZ. Further, they failed to remove BORISADE as the one making decisions about Plaintiff, MAYRA MARTINEZ after he hit her a second time in the jail.

133.    The actions and omissions of these Defendants violated clearly established law, and violated the Constitutional rights of Plaintiff, MAYRA MARTINEZ, including her rights under the Fourth and Fourteenth Amendments to the United States Constitution, through the wrongful acts of failing to intervene and in fact facilitating BORISADE'S unreasonable force against Plaintiff, MAYRA MARTINEZ.

134.    As a direct and proximate result of the acts and omissions of these Defendants, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired.    These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law, against the Defendants K. A. CHASTAIN, J. C. ANDRES, and other unknown officers and any other such relief this Honorable Court deems reasonable and just.

## COUNT X
## DEFENDANT BORISADE'S VIOLATION OF 42 U.S.C. § 1983 (AT SCORES)

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein, and further alleges as follows:

135.    This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of

Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

136.    The actions alleged above deprived Plaintiff, MAYRA MARTINEZ, of clearly

defined, established and well-settled Constitutional rights specifically: (a) the freedom from the

use of excessive and unreasonable force; (b) the freedom from unreasonable seizure; and (c) the

freedom from deprivation of liberty without due process of law.

137.    Defendant BORISADE acted recklessly, maliciously, or deliberately indifferent

toward Plaintiff, MAYRA MARTINEZ when he deprived her of her Constitutional rights.

138.    As a direct and proximate result of the aforementioned acts and omissions of

Defendant BORISADE, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting

pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment

of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap,

and has lost earnings and her earning ability has been significantly impaired.  These losses are

either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like

losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages,

including compensatory damages, punitive damages, all costs, interest and reasonable attorney's

fees provided under the applicable law, against the Defendant, BORISADE and any other such

relief this Honorable Court deems reasonable and just.

**COUNT XI**
**DEFENDANT BORISADE'S VIOLATION OF 42 U.S.C. § 1983**
**(AT PTDF SALLY PORT)**

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein, and

further alleges as follows:

139.    This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of

Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

140.    The actions alleged above deprived Plaintiff, MAYRA MARTINEZ, of clearly

defined, established and well-settled Constitutional rights specifically: (a) the freedom from the

use of excessive and unreasonable force; (b) the freedom from unreasonable seizure; and (c) the

freedom from deprivation of liberty without due process of law.

141.    Defendant BORISADE acted recklessly, maliciously, or deliberately indifferent

toward Plaintiff, MAYRA MARTINEZ when he deprived her of her Constitutional rights.

142.    As a direct and proximate result of the aforementioned acts and omissions of

Defendant BORISADE, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting

pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment

of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap,

and has lost earnings and her earning ability has been significantly impaired.  These losses are

either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like

losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages,

including compensatory damages, punitive damages, all costs, interest and reasonable attorney's

fees provided under the applicable law, against the Defendant, BORISADE and any other such

relief this Honorable Court deems reasonable and just.

### COUNT XII
### DEFENDANT BORISADE – VIOLATION OF 42 U.S.C. § 1983 FOR
### DEPRIVATION OF MEDICAL CARE

Plaintiff adopts and re-alleges Paragraphs 1 through 68 as if set forth fully herein and

further alleges as follows:

143.    This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

144.    As previously discussed, on April 27, 2016, Defendant BORISADE encountered Plaintiff MAYRA MARTINEZ in the parking lot of Scores. Defendant BORISADE repeatedly struck Plaintiff MAYRA MARTINEZ while Plaintiff was in handcuffs and lying face down on the parking lot pavement.   Defendant BORISADE's actions against Plaintiff MAYRA MARTINEZ caused Plaintiff significant physical and mental injuries.

145.    Later that same day, Defendant BORISADE encountered Plaintiff MAYRA MARTINEZ in the Sally Port of Jacksonville Pre-trial detention facility. Defendant BORISADE repeatedly struck Plaintiff MAYRA MARTINEZ while Plaintiff was handcuffed.  The use of force by Defendant BORISADE caused Plaintiff MAYRA MARTINEZ to lose consciousness and significant physical and mental injuries.

146.    Following these physical altercations between Defendant BORISADE and Plaintiff MAYRA MARTINEZ, Defendant BORISADE knew that Plaintiff MAYRA MARTINEZ was in need of medical assistance and attention.   Defendant BORISADE was present for the incident in the Scores parking lot and for the incident in the Sally Port of Jacksonville's Pre-Trial Detention Facility.

147.    Defendant BORISADE deprived Plaintiff MAYRA MARTINEZ of medical attention, as alleged herein, by allowing officers to tell medical professionals an incomplete, inaccurate and/or untrue description of her injuries, by failing to render any aid for the injuries caused, by leaving Plaintiff MAYRA MARTINEZ unconscious for a prolonged period of time causing her increased injuries, by refusing medical attention and otherwise by not allowing her to be seen by a doctor.

148.   As a direct and proximate result of the aforementioned acts and/or omissions on the part of Defendant BORISADE, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, has lost earnings and her earning ability has been significantly impaired. These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, punitive damages, all costs, interest and reasonable attorney's fees provided under the applicable law, against Defendant BORISADE and any other such relief this Honorable Court deems reasonable and just.

### COUNT XIII
### DEFENDANT SHERIFF WILLIAMS' VIOLATION OF 42 U.S.C. § 1983 (AT SCORES)

Plaintiff adopts and re-alleges Paragraphs 1 through 68 as if set forth fully herein and further alleges as follows:

149.   This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

150.   At all times material, Defendant Mike Williams was Sheriff of JSO and therefore the supervisor of all law enforcement personnel employed by the City of Jacksonville. Defendant SHERIFF WILLIAMS is a person within the meaning of 42 U.S.C. § 1983.

151.   Defendant SHERIFF WILLIAMS, is liable because of his policy and custom of encouraging, tolerating, permitting, and ratifying a pattern of improper conduct by law enforcement under his supervision of which he knew or reasonably should have known.

152.   During the time leading up to this incident, and to date, many notices of intent to sue and many lawsuits alleging breaches by JSO of people's civil rights.

153. During the time leading up to this incident, and to date, Officers are repeatedly arrested at JSO for various violations of civil rights.

154. The breach of Plaintiff, MAYRA MARTINEZ's civil rights was allowed to compound from one scene to the next, creating a series of events which led to systemic breaches of her constitutional rights.

155.   Defendant SHERIFF WILLIAMS permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable and illegal use of force by law enforcement personnel under his tenure.

156.   Defendant SHERIFF WILLIAMS failed to discipline or eradicate known instances of wrongful and excessive use of force by officers under his direction and employ.

157.   Defendant SHERIFF WILLIAMS refused to adequately investigate complaints of previous incidents of wrongful and excessive use of force by officers under his direction and employ and instead caused law enforcement personnel to believe such conduct is permissible.

158.   Defendant SHERIFF WILLIAMS maintained a system of review of complaints of excessive use of force by JSO law enforcement personnel and employees which has failed to identify the use of excessive force by those officers and employees and subject those employees and law enforcement personnel, who use excessive force, to discipline, close supervision or restraining to the extent that it has become the de facto policy and custom by Defendant SHERIFF WILLIAMS to tolerate the use of excessive force by law enforcement personnel under his direction and employ.

159. Defendant SHERIFF WILLIAMS maintained a failed system, leading to the deprivation of Plaintiff, MAYRA MARTINEZ, of medical attention, as alleged herein, by allowing officers to tell medical professionals an inaccurate, incomplete and/or untrue description of her injuries, by failing to render any aid for the injuries caused, by leaving her unconscious for a prolonged period of time causing her increased injuries, by refusing medical attention and otherwise by not allowing her to be seen by a doctor. Not only were multiple officers present for the incidents of batter, excessive use of force, and deprivation of medical attention as alleged herein, but the video feed was contemporaneously accessible to all supervisory employees of JSO.

160. The foregoing acts, omissions, and systematic deficiencies exist either because of polices and customs of Defendant SHERIFF WILLIAMS or the failure to administer the policies and customs, such that officers and employees under the employ and direction of Defendant SHERIFF WILLIAMS are unaware or alternatively unconcerned with the rules and laws governing permissible use of force and to believe that such use of force is entirely within the discretion of the deputies and employees and that such use of force would not be honestly and properly investigated, all with the foreseeable result that officers and employees are more likely to use excessive force in situations where such force is not necessary, reasonable or legal.

161. As a direct and proximate result of the aforementioned acts and/or omissions on the part of Defendant SHERIFF WILLIAMS, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, has lost earnings and her earning ability has been significantly impaired.

These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, interest and reasonable attorney's fees provided under the applicable law, against the Defendant, SHERIFF WILLIAMS, and any other such relief this Honorable Court deems reasonable and just.

**COUNT XIV**
**DEFENDANT SHERIFF WILLIAMS VIOLATION OF 42 U.S.C. § 1983**
**(AT PTDF SALLY PORT)**

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein, and further alleges as follows:

162.    This claim is brought pursuant to 42 U.S.C. §§1983 and 1988 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

163.    At all times material, Defendant Mike Williams was Sheriff of JSO and therefore the supervisor of all law enforcement personnel employed by the City of Jacksonville. Defendant SHERIFF WILLIAMS is a person within the meaning of 42 U.S.C. § 1983.

164.    Defendant SHERIFF WILLIAMS, is liable because of his policy and custom of encouraging, tolerating, permitting, and ratifying a pattern of improper conduct by law enforcement under his supervision of which he knew or reasonably should have known.

165.    During the time leading up to this incident, and to date, many notices of intent to sue and many lawsuits alleging breaches by JSO of civil rights have been filed.

166. During the time leading up to this incident, and to date, Officers are repeatedly arrested at JSO for various violations of citizen's civil rights.

167. The breach of Plaintiff, MAYRA MARTINEZ'S civil rights was allowed to compound from one scene to the next, creating a series of events which led to systemic violations of her constitutional rights.

168. Defendant SHERIFF WILLIAMS permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable and illegal use of force by law enforcement personnel under his tenure.

169. Defendant SHERIFF WILLIAMS failed to discipline or eradicate known instances of wrongful and excessive use of force by officers under his direction and employ.

170. Defendant SHERIFF WILLIAMS refused to adequately investigate complaints of previous incidents of wrongful and excessive use of force by officers under his direction and employ and instead caused law enforcement personnel to believe such conduct is permissible.

171. Defendant SHERIFF WILLIAMS maintained a system of reviewing complaints of excessive use of force by JSO law enforcement personnel and employees which has failed to identify the use of excessive force by those officers and employees and further to subject those employees and law enforcement personnel, who use excessive force, to discipline, close supervision or restraining to the extent that it has become the de facto policy and custom by Defendant SHERIFF WILLIAMS to tolerate the use of excessive force by law enforcement personnel under his direction and employ.

172. Defendant SHERIFF WILLIAMS maintained a failed system, leading to Plaintiff, MAYRA MARTINEZ'S the deprivation of medical attention, as alleged herein, by allowing officers to tell medical professionals an incomplete, inaccurate, and/or untrue description of her injuries, by failing to render any aid for the injuries caused by an officer, by leaving her unconscious for a prolonged period of time causing her increased injuries, by refusing medical

attention and otherwise by not allowing her to be seen by a doctor. Not only were multiple officers present for the incidents of battery, excessive use of force and deprivation of medical attention as alleged herein, but the video feed was contemporaneously accessible to all supervisory employees of JSO.

173.   The foregoing acts, omissions, and systematic deficiencies exist either because of polices and customs of Defendant SHERIFF WILLIAMS or the failure to administer the policies and customs, such that officers and employees under the employ and direction of Defendant SHERIFF WILLIAMS are unaware or alternatively unconcerned with the rules and laws governing permissible use of force and to believe that such use of force is entirely within the discretion of the deputies and employees and that such use of force would not be honestly and properly investigated, all with the foreseeable result that officers and employees are more likely to use excessive force in situations where such force is not necessary, reasonable or legal.

174.   As a direct and proximate result of the aforementioned acts and/or omissions on the part of Defendant SHERIFF WILLIAMS, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, has lost earnings and her earning ability has been significantly impaired. These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, interest and reasonable attorney's fees provided under the applicable law, against the Defendant, SHERIFF WILLIAMS, and any other such relief this Honorable Court deems reasonable and just.

## COUNT XV
## MALICIOUS PROSECUTION BY DEFENDANT SCORES

Plaintiff adopts and re-alleges Paragraphs 1 through 56 as if set forth fully herein, and further alleges as follows:

175.    On April 27, 2016, Plaintiff, MAYRA MARTINEZ, arrived at SCORES for her first day of work as a dancer.

176.    At all times material to this Complaint, employees of SCORES were acting in the course and scope of their employment with EMPEROR'S, INC, which owns SCORES.

177.    SCORES DJ, Jacob Madden, greeted Plaintiff, MAYRA MARTINEZ at the door and brought her to the DJ booth to fill out an application while he made a copy of her ID.

178.    MAYRA MARTINEZ was served alcohol and asked to perform in a manner directly contradictory to Jacksonville's Municipal Code.

179.    Kenneth Braumbach, the VIP bar-back, saw Plaintiff, MAYRA MARTINEZ emerge from the VIP room approximately ten (10) to fifteen (15) minutes later, and the first thing he noticed was that "[h]er equilibrium and the way that she's carrying herself were off from how she went in. She [was] visibly to me at this point intoxicated or on something already."

180.    Mr. Brumbach then brought Plaintiff, MAYRA MARTINEZ to the DJ booth, where she told Mr. Madden that customers were illegally touching her.

181.    Instead of addressing Ms. Martinez's concerns, Mr. Madden then told Plaintiff, MAYRA MARTINEZ she was too intoxicated to work and that she needed go home but could come "try again tomorrow".

182.    Plaintiff, MAYRA MARTINEZ complied with his request to go to the dressing room, where she prepared to leave.

183.    When Plaintiff, MAYRA MARTINEZ subsequently declined Mr. Madden's offer to call her a cab, he consulted the night-manager, "Dan," who told Mr. Madden to call the police.

184.    Mr. Brumbach and Mr. Madden then told Plaintiff, MAYRA MARTINEZ that they were calling the police and asked her to wait outside.

185.    Plaintiff, MAYRA MARTINEZ agreed to wait outside, but refused to leave the property until SCORES released her purse, containing her wallet, home and car keys, money, and ID cards, from the DJ booth.

186.    Mr. Madden proceeded to call 911, and told the operator that one of the dancers was extremely intoxicated and would not leave, omitting in the false report that SCORES was depriving her of her possessions.

187.    At approximately 4:50 P.M., Officer VICKERY and Officer BORISADE arrived at SCORES, where they found Plaintiff, MAYRA MARTINEZ waiting in the parking lot.

188.    Plaintiff, MAYRA MARTINEZ also told Officer VICKERY that she couldn't leave because "she still had some items in the establishment such as her purse and identification."

189.    Mr. Madden claimed he asked Plaintiff, MAYRA MARTINEZ to leave numerous times but she refused to leave the parking lot. Mr. Madden proceeded to tell Officer BORISADE that Plaintiff, MAYRA MARTINEZ was disturbing patrons from the parking lot and that he wanted her trespassed from the property.

190.    After consulting one another, Officer VICKERY and Officer BORISADE informed Plaintiff, MAYRA MARTINEZ that she was being trespassed from the property. Plaintiff, MAYRA MARTINEZ tried to explain that she was unable to leave without her purse.

191.     Once she was in the back of the Officer's vehicle, Plaintiff, MAYRA MARTINEZ repeated that her purse was still in SCORES. Officer BORISADE returned to the establishment and asked Mr. Madden if he had Ms. Martinez's purse, at which point Mr. Madden retrieved it from the DJ booth.

192.     These events resulted in Plaintiff, MAYRA MARTINEZ being arrested for Trespass on Property/Defies Order to Leave or Endangers Property and Resisting an Officer with Violence.

193.     On May 17, 2016, an information was filed against Plaintiff, MAYRA MARTINEZ, formally charging her with Resisting Officer With Violence to His or Her Person, Trespass on Property Other Than Structure or Conveyance, and Battery.

194.     SCORES employees withheld or gave false information to authorities, which commenced or continued criminal proceedings against MAYRA MARTINEZ.

195.     SCORES employees' actions and statements subjected Plaintiff, MAYRA MARTINEZ to unjustifiable litigation or unwarranted criminal prosecution.

196.     SCORES was the legal cause of the original proceeding against Plaintiff, MAYRA MARTINEZ, as they sought charges against her for trespass.

197.     Officer BORISADE and Officer VICKERY did not have the legal authority to arrest Plaintiff, MAYRA MARTINEZ for trespass unless an owner or agent of EMPERORS, INC. gave her prior warning.

198.     SCORES employees Kenneth Brumbach and Jacob Madden merely told Plaintiff, MAYRA MARTINEZ that they're "going to call it a day" and that she could "maybe come back tomorrow."

199.   Although SCORES employees asked MAYRA MARTINEZ to wait outside for police to arrive, they did not ask her to leave the premises, nor did they tell her she would be arrested for trespass if she remained or returned.

200.   Because Mr. Madden was holding Plaintiff, MAYRA MARTINEZ'S purse behind the DJ booth, she had no reasonable or safe means of leaving, as her purse contained her money, keys, and identification.

201.   Mr. Madden's statements to Officer BORISADE were false and misleading in at least two respects. First, Mr. Madden failed to tell Officer BORISADE that MAYRA MARTINEZ had not been asked to leave the property, rather she was asked to wait outside. Second, Mr. Madden failed to mention the fact that her purse (containing her keys, money, and identification) was being held inside the establishment, at Mr. Madden's DJ booth.

202.   Without keys, money or identification, Plaintiff, MAYRA MARTINEZ had no reasonable means of leaving the property. By withholding such information, Officer BORISADE was under the false impression that MAYRA MARTINEZ had received a prior warning and thus, Mr. Madden prevented the intelligent exercise of the arresting officer's discretion. Wherefore, Mr. Madden gave information which he knew to be false and unduly influenced authorities, he is the legal cause of the commencement or continuation of criminal trespass proceedings against Plaintiff, MAYRA MARTINEZ.

203.   Mr. Madden was also the legal cause of the criminal battery proceeding against MAYRA MARTINEZ because he gave information to authorities which he knew to be false and so unduly influenced authorities.

204.    On or about April 28, 2016, the day after Plaintiff, MAYRA MARTINEZ'S alleged trespass, Mr. Madden signed a sworn affidavit in which he claimed she "grabbed [his] penis."

205.    Mr. Madden gave information that he knew to be false, and such information unduly influenced authorities.

206.    Defendant is the legal cause of the proceedings for battery.

207.    The Assistant State Attorney, in good faith, entered a nolle prosequi on Plaintiff, MAYRA MARTINEZ'S charges for trespass and battery, and MAYRA MARTINEZ had a bona fide termination of the original proceeding(s) in her favor.

208.    Because SCORES employees were effectively preventing Plaintiff, MAYRA MARTINEZ from leaving, the fact that she remained on the property could be explained innocently, as she was merely trying to retrieve the very property that would allow her to leave and have access to somewhere else to go. Where the facts that instituted this criminal proceeding can be explained innocently, a lack of probable cause is established.

209.    Regarding the battery alleged by SCORES employee Jacob Madden, Plaintiff, MAYRA MARTINEZ reiterates her position that this incident never occurred, and that the allegation is completely false. Where allegations are fictitious in nature, it cannot be said that Defendant initiated criminal proceedings upon probable cause.

210.    The above-described acts of Jacob Madden, Kenneth Braumbach, and "Dan" (night-manager) were committed while acting as agents, servants, and/or employees of Defendant EMPEROR'S, INC., and while acting within the scope of their employment with EMPEROR'S, INC.

211.    As the principal and employer of Jacob Madden, Kenneth Braumbach, and "Dan"

41

(night-manager), Defendant, EMPEROR'S, INC. is responsible for all of the acts committed by Jacob Madden, Kenneth Braumbach, and "Dan" (night-manager) within the scope of their employment.

212.    As the principal and employer of Jacob Madden, Kenneth Braumbach, and "Dan" (night manager), Defendant EMPEROR'S, INC., is vicariously liable for the negligent actions of Jacob Madden, Kenneth Braumbach, and "Dan" (night-manager) through operation of the doctrine, *respondeat superior*, and Florida law.

213.    As a direct and proximate result of the acts and omissions of this Defendant, Plaintiff, MAYRA MARTINEZ, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of her injuries, suffered physical handicap, and has lost earnings and her earning ability has been significantly impaired.   These losses are either permanent or continuing in nature and Plaintiff, MAYRA MARTINEZ, will suffer like losses or impairments in the future.

WHEREFORE, the Plaintiff, MAYRA MARTINEZ, demands judgment for damages, including compensatory damages, all costs, and interest provided under the applicable law, against Defendant EMPERORS, INC. and any other such relief this Honorable Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all issues so triable.

DATED _11/7/18_

Law Office of John M. Phillips, LLC

**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar Number:  0477575
4230 Ortega Boulevard
Jacksonville, FL 32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorney for Plaintiff
jphillips@floridajustice.com
michele@floridajustice.com